UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE GUADALUPE NUNES, ANTONIO ROMERO, JOSE ALBERTO GIL MEJIA, ERASMO NIETO, and ROGELIO ESCUTIA on behalf of themselves and all others persons similarly situated known and unknown, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 09 C 7168 |
| vs. | ) ) | |
| CHICAGO IMPORT, INC., and ASHOKKUMAR D. PUNJABI, individually, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the court on the motion of Plaintiffs Jose Guadalupe Nunes, Antonio Romero, Jose Alberto Gil Mejia, Erasmo Nieto, and Rogelio Escutia ("Plaintiffs") for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

Defendant Chicago Import, Inc. ("Chicago Import") is a wholesale trading company owned by Defendant Ashokkumar D. Punjabi ("Punjabi"). As owner and shareholder, Punjabi had primary responsibility for the daily business operations of Chicago Import. He had the authority to sign on the corporation's checking accounts,

participate in decisions regarding employee compensation, and supervise the work of Chicago Import's employees. Many of those employees worked in Chicago Import's warehouses where the company stored its merchandise and sold it to retailers. These warehouses were typically open for business Monday through Saturday between 9:00 a.m. and 8:00 p.m. During some weeks in December, the company also opened for business on Sunday for a few hours.[1]

Plaintiffs worked as laborers at Chicago Import's warehouses. Jose Guadalupe Nunes ("Nunes") worked for Chicago Import between September 2005 and December 28, 2009. Erasmo Nieto ("Nieto") was employed by Chicago Import between April 2008 and January 2009 and from May 2009 until December 28, 2009. Jose Tello worked at Chicago Import's warehouse from April 2008 until July 2009; his brother Antonio also worked at the warehouse from April 2009 until August 2009. Francisco Javier Leon Coss ("Coss") was employed as a warehouse laborer between approximately the summer of 2007 through May 2009. Omar Quintero ("Quintero") worked for Chicago Import from June 2009 until April 2010. Rogelio Escutia ("Escudo"), Jose Alberto Gil Mejia ("Mejia"), and Jose Antonio Romero ("Romero") still work for Chicago Import. Escutia began working at the company's warehouse in

---

[1] The parties dispute the hours Chicago Import opened for business on Sundays. Plaintiffs testified that the warehouse opened from 9:00 a.m. until 3:00 p.m. Punjabi testified that he would close for business at 1:00 p.m. on some days and 3:00 p.m. on others.

July 2006, Romero has worked there since March 2009, and Mejia has been with the company since April 2009.

Defendants compensated the Plaintiffs using various arrangements that did not provide for payment of the statutory minimum hourly wage or for additional compensation for the hours worked in excess of forty. From 2007 until January 2010, Plaintiffs received a flat weekly rate that did not fluctuate depending on the number of hours worked. During this time, a worker that missed a day of work would have $50 deducted from their weekly wages. Additionally, an employee that worked one of the Sundays in December that Chicago Import opened for business would receive an additional $50 at the end of the week. On January 9, 2010, Chicago Import began paying its employees on an hourly basis and required them to punch a time clock at the beginning and end of each shift in order to properly calculate their wages.[2]

Though the parties largely agree on the manner in which Chicago Import compensated the Plaintiffs, the two sides differ markedly on many other aspects of Plaintiffs' employment. The parties generally dispute the number of hours all of the Plaintiffs worked at the warehouse. A number of Plaintiffs testified that they worked almost all the hours that Chicago Import was open for business, or Monday through

---

[2] The parties dispute whether Plaintiffs received the statutory minimum wage during the period after Defendants instituted the punch card system at the warehouse.

Saturday between 9:00 a.m. and 8:00 p.m., and on many Sundays during December from open until close. Defendants have presented testimony and documents to challenge Plaintiffs' assertions as to their hours worked. Punjabi admitted that the Plaintiffs were scheduled to work during business hours but testified that many Plaintiffs came in late and left early. Punjabi also stated that some Plaintiffs arrived at 9 o'clock in the morning but did not begin work right away and others left at 8 o'clock in the evening but stopped working well before that time. Additionally, Defendants have cited testimony from Escutia and Roque as evidence that the Plaintiffs took a fifteen-minute breakfast break at least two or three days a week. Defendants' also highlight their informal records of cash salary payments made to Plaintiffs from 2007 until 2010 to challenge their testimony about whether they worked on Sundays in December. Though the Plaintiffs testified that they worked every Sunday in December throughout this period and received an additional $50 for their extra work, Defendants' records indicate that none of the Plaintiffs received an additional $50 for any week during December from 2007 until 2009.

Defendants also mount specific challenges as to some of the individual Plaintiffs' assertions regarding their hours and wages. In his sworn statement, Punjabi stated that both Quintero and Nunes received an additional $100 in weekly salary that the Plaintiffs did not account for in their damages request. Defendants also cite to punch card records

and testimony from Escutia and Mejia that indicates they overstated the number of hours they regularly worked during their employment. Both Escutia and Mejia testified that their weekly hours for 2010, as recorded by Chicago Import's time-card system, were roughly similar to their regular hours before the company began maintaining an accurate account of their hours. The timekeeping records for Escutia and Mejia reflected weekly totals that were substantially lower than their totals for those weeks before the institution of the time-card system. Also, Defendants dispute Nieto's assertions about the number of weeks he worked at Chicago Import. They highlight portions of their informal salary records that suggest Nieto did not show up at the warehouse during certain weeks which he asserted he had reported to work. The record on summary judgment also reveals some contradictions in Romero's assertions regarding his wages and hours. Romero stated that he received $350 in wages for the week of January 10, 2010; Defendants' records indicate Romero received $500 for that week. Romero also testified that he worked 76 hours for the week ending on January 17, 2010; Chicago Import pay records for that same week show that Romero worked only 55 hours.[3]

---

[3] Defendants also argue that summary judgment is inappropriate because genuine issues of fact exist as to whether some Plaintiffs' accepted payments that should offset any damages award. The doctrine of offset, or setoffs, is an affirmative defense. *See Chicago G. W. R. Co. v. Peeler*, 140 F.2d 865, 868 (8th Cir. 1944). Any affirmative defense that is not raised in the defendant's answer is waived. *Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 735 (7th Cir. 2004). Defendants admit that they did not raise any such defense in their answer; accordingly, we decline to address any evidence of a potential setoff to Plaintiffs' damages.

On November 16, 2009, Plaintiffs filed suit against Defendants asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/12. Plaintiffs now move for summary judgment as to Counts I-IV of their complaint.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With these principles in mind, we turn to the Defendants' motions.

## DISCUSSION

Plaintiffs maintain that they are entitled to summary judgment on their FLSA and IMWL claims because Defendants have admitted their liability and have not presented enough evidence to undermine the reasonableness of Plaintiffs' damage calculations. Defendants have conceded that they did not pay Plaintiffs the statutory minimum hourly wage or pay them additional wages for hours worked in certain weeks in excess of forty. Accordingly, we grant Plaintiffs' motion for summary judgment as to liability on their FLSA claims, Counts I and II, and their IMWL claims, Counts III and IV.

Though Defendants grant that summary judgment may be awarded on the liability question, they argue that they have submitted enough evidence to avoid summary judgment on the damages question. In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme Court held that courts should apply a specific burden-shifting method of proof when confronted with a FLSA claim against an employer that has not kept sufficiently accurate records. Specifically, the Supreme Court held:

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id*. 687-688 (superseded by statute on other grounds as stated in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005)).

Defendants have presented enough evidence on summary judgment to "negative the reasonableness of the inference to be drawn" from Plaintiffs' proof in support of their damages request. *Id*. at 688. Chicago Import's records of the wages Plaintiffs received from 2007 until January 2010 undercut many of the Plaintiffs' assertions about their hours, weekly wages, and the number of Sundays they worked at the warehouse. Punjabi's testimony and sworn statements about Plaintiffs' work habits and the additional compensation paid to Nunes and Roque subvert the Plaintiffs' statements on these issues. Plaintiffs' assertions are also disputed by their own deposition testimony. Escutia and Roque testified that they both took morning meal breaks at least two or three times a week; these breaks are not accounted for in the damages request for the two men. Additionally, Plaintiffs' evidence regarding Escutia and Mejia's regular hours is challenged by their own testimony about the similarities between their work habits during the time Chicago Import kept time-card records and the hours they worked before the company implemented the system. Defendants' evidence about Plaintiffs' hours and wages precludes the entry of summary judgment on the damages question.[4]

---

[4] Defendants also argue that summary judgment should not be awarded on damages because genuine issues of material fact exist as to whether Coss can recover damages for work performed in 2007. Ordinarily, FLSA claims have a two-year statute of limitations unless the plaintiff can demonstrate that the defendant acted willfully, in which case the limitations period extends to three years. *See Bankston v. State of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995). Defendants argue that triable issues exist about whether Defendants willfully violated FLSA such that the three-year limitations period applies and Coss may obtain damages for work done in 2007. Defendants maintain that Punjabi's testimony that he believed Plaintiffs were independent contractors is enough for a reasonable juror to conclude that Defendants did not act willfully in violating FLSA. Willfulness is an objective standard.
(continued...)

## CONCLUSION

Plaintiffs' motion for summary judgment is granted as to liability on Counts I-IV.

Plaintiffs' motion for summary judgment is denied as to damages.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated: February 11, 2011

---

[4](...continued)
A plaintiff can establish a willful violation by showing that a defendant had reason to know of facts that would lead a reasonable person to conclude that his "company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69 (2007). Evidence of Punjabi's subjective belief, standing alone, does not create a triable issue of fact as to whether Defendants' conduct did not meet the objective willfulness standard. *See Beer Capitol Distrib. v. Guinness Bass Imp. Co.*, 290 F.3d 877, 880 (7th Cir. 2002). Absent any issues of material fact as to the willfulness of Defendants' violation, we find that Coss may obtain damages for the duration of his employment.